UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-cv-23791

SOHO BOUTIQUE TIMES SQUARE
LLC, a New York limited liability company,

     Plaintiff,

v.

HANNA KARCHO, DAVID DAVUTOGLU,
and REMO POLSELLI,

     Defendants.

_____

## **COMPLAINT**

Plaintiff, Soho Boutique Times Square LLC ("Soho Boutique" or "Buyer"), sues Defendants, Hanna Karcho ("Karcho"), David Davutoglu ("Davutoglu," together with Karcho, "Sellers"), and Remo Polselli ("Polselli").  This action arises out of Soho Boutique's purchase of a boutique hotel in New York City based on numerous representations and warranties that turned out to be false due to, among other things, millions of dollars in liabilities owed by the hotel operation, the existence of a unionized workforce, a month-to-month lease for a restaurant, and a licensing agreement that prevented a change in ownership and management of the hotel operation and use of the "Soho Boutique" brand name.  Defendants also have failed to deliver essential licenses and certifications necessary for the hotel operation.  Thus, Soho Boutique has sustained millions of dollars in damages and other harm, for which it now seeks redress against Defendants.

## **THE PARTIES**

1.     Soho Boutique is a New York limited liability company with its principal place of business in New York, NY.  Under the agreements at issue, Soho Boutique first became the 50% owner and then the sole owner of 45th Street Hotel LLC ("45th Street Hotel" or the "Company"),

a New York limited liability company, which in turn is the sole owner of the operations of the Night Hotel by SB at Times Square ("Night Hotel"), located at 132 W. 45th St., New York, NY.

2.      Karcho is an individual who resides in California.  Karcho previously held an ownership interest in 45th Street Hotel and the Night Hotel.

3.      Davutoglu is an individual who resides in California.  Davutoglu previously held an ownership interest in 45th Street Hotel and the Night Hotel.

4.      Polselli is an individual who resides in California.

## JURISDICTION AND VENUE

5.      The Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the parties are, on the one hand, "citizens of a State," and, on the other, "citizens or subjects of a foreign state" and the amount in controversy exceeds $75,000, exclusive of fees, interest, and costs.

6.      The sole member of Soho Boutique is Soho Boutique Management LLC, also a New York limited liability company, which has two members:  Tenedora de Valores Oceano Pacifico S.L., a Spanish *sociedad limitada*, and Alvaro Francisco Armenteros de Dalmases, a citizen of Spain.  For diversity purposes, the citizenship of a limited liability company depends on the citizenship of its members.  *Thermoset Corp. v. Bldg. Materials Corp of Am.*, 849 F.3d 1313, 1316 (11th Cir. 2017).  Thus, for diversity purposes, Soho Boutique is considered a Spanish citizen.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(a), section 685.101, Fla. Stat. (2020), and section 685.102, Fla. Stat. (2020), because under Section 8(g) of the September 11, 2019 Membership Interest Purchase Agreement ("2019 Agreement") at issue, Sellers agreed that "[v]enue of any action arising under or pursuant to this Agreement shall lie exclusively in the Federal and state courts residing in Miami-Dade County, Florida."  Section 11(g) of the March 18, 2020 Membership Interest Purchase Agreement ("2020 Agreement"), also at issue, contains an

identical venue provision.  Under both agreements, Sellers also agreed that they "irrevocably and unconditionally waive[d] any objection or defense that [they] have to the laying of venue in any such action, suit, or proceeding in the State of Florida" and to not "plead or claim that any such action, suit, or proceeding brought in such court has been brought in an inconvenient forum."

8.     Venue is proper in Florida against Defendant Polselli because he was an agent of Sellers in and so closely related to the transactions at issue that it was foreseeable he would be bound by the forum-selection clauses in the 2019 Agreement and 2020 Agreement.

## FACTUAL ALLEGATIONS

9.     On or about November 15, 1993, B.K.B.W. Realty Corp. (together with its successors and assigns, "B.K.B.W."), as landlord, entered into an Agreement of Lease (the "Ground Lease") with 132 Hotel Corp., under which B.K.B.W. agreed to lease the property located at 132 W. 45th St., New York, NY.  132 Hotel Corp. subsequently assigned the Ground Lease to Kensington Hotel Associates, L.P. ("Kensington"), a New York limited partnership, which, on June 20, 2018, assigned the Ground Lease to 45th Street Hotel, then owned by Sellers.

10.     Starting on June 20, 2018, Defendants took over the operations of the Night Hotel. Polselli and his wife, Karcho, are well-versed in the hospitality industry.  They purport to have owned and/or operated more than 91 hotels in 19 states and three countries since 1991.

11.     Polselli and Karcho have historically owned and/or managed these hotel properties together through an intricate web of limited liability companies.  The Night Hotel was no exception—Karcho, and another investor, Defendant Davutoglu, a real estate developer from California, each held a 50% ownership interest in the Night Hotel until September 11, 2019.

12.     Polselli was the front-man of the Night Hotel, making all major business decisions, overseeing business development, and leading negotiations with potential investors.  Karcho and

Davutoglu provided Polselli absolute discretion to negotiate contracts on behalf of 45th Street Hotel.  Despite not holding a direct interest in the Night Hotel, Polselli benefitted financially from the hotel and personally guaranteed liabilities arising from 45th Street Hotel's ownership.

*Soho Boutique Partners with Defendants*

13.    Soho Boutique and its affiliated companies own and operate dozens of boutique hotels in Europe, Mexico, and the United States.  Beginning in 2019, Soho Boutique sought to expand its presence in the United States after successfully launching a hotel in Miami Beach, Florida.  One of its priorities was to open its first hotel in New York City.

14.    In July 2019, Michael Ohana, a Miami-based consultant, introduced Soho Boutique to Polselli, who purportedly owned several hotels in New York City and was looking for a partner to acquire additional hotels.  Polselli proposed working with Soho Boutique to acquire the Renaissance New York Hotel 57, located at 130 E 57th St, New York, NY (the "Renaissance").

15.    Shortly after being introduced to Polselli, Soho Boutique's representatives traveled to New York City to tour and stay at the Renaissance.  During their stay, Polselli confided in Soho Boutique that he and his spouse purportedly were co-owners of the Night Hotel in Times Square, and encouraged Soho Boutique's representatives to spend an evening there.  Polselli explained that his business partner at the Night Hotel was potentially interested in exiting his investment, and Polselli would be inclined to allow him to depart if the right business partner came along.

16.    After the visit to New York City, Soho Boutique decided to pursue the acquisition of the Night Hotel instead of the Renaissance.  The Night Hotel was roughly one-third of the Renaissance's size and, according to Polselli, paid significantly less rent.  The Renaissance also was a union hotel with hundreds of employees, while, also according to Polselli, the Night Hotel

was not subject to any unions or collective-bargaining agreements. Thus, Soho Boutique could better control operating expenses at the Night Hotel and have flexibility in its workforce.

17. Negotiations between Soho Boutique and Defendants began around July 10, 2019, and culminated with the execution of a purchase agreement two months later. During that two-month period, Soho Boutique conducted due diligence on 45th Street Hotel and the Night Hotel's financial and operational footing. Polselli generally oversaw negotiations on behalf of Karcho and Davutoglu and, as such, was tasked with providing information during diligence.

18. A critical aspect of Soho Boutique's plan was that Defendants agreed to let Soho Boutique manage and oversee the day-to-day operations of the Night Hotel. After all, Soho Boutique's main purpose in acquiring the Night Hotel was to continue expanding the Soho Boutique brand. This topic was the subject of robust discussions and negotiations during diligence.

19. As Soho Boutique explained to Polselli in an e-mail dated July 11, 2019, under the verbal "agreement" they had reached, "management will be carried out exclusively by S [i.e., Soho Boutique]." On July 12, 2019, Polselli responded that he "look[ed] forward to a partnership that will continue to help us with our [p]assion of doing what we LOVE [sic]." On July 16, 2019, Polselli sent revised deal terms to Soho Boutique, including: "Day to day mgt [sic] will be co managed [sic] between [S]oho [B]outique and Hanna [Karcho]." Soho Boutique replied on July 17, 2019, there were "things that were not said as agreed," including: "Management is on Soho [Boutique]. [We] have very bad experiences sharing management. That doesn´t mean we can't collaborate on everything and work together at the beginning, or even hire [Karcho]." Polselli eventually agreed, on behalf of all Defendants, to allow Soho Boutique to manage the Night Hotel.

20. At no point during the negotiations did Polselli inform Soho Boutique that the Night Hotel was currently being managed by a company other than 45th Street Hotel or that any existing

contracts would prevent Soho Boutique from immediately taking over the Night Hotel's day-to-day operations. For instance, by e-mail dated August 9, 2019, Soho Boutique asked Polselli and his counsel: "The agreement says that we will agree to all the terms of the existing management agreement. Our understanding is that the existing management agreement will be terminated and that SOHO will be the new manager (and we will be presenting a new management agreement). Is this not your understanding? Please confirm." In response, Polselli's counsel stated: "I just spoke with [Polselli]. Please see the answers below to each of your questions in red." Polselli's response was as follows: "The existing agreement will be cancelled and a brand new management agreement will be executed." But a few weeks later, Soho Boutique was informed that neither Polselli nor Sellers had executed a written management agreement with 45th Street Hotel following their acquisition of the Night Hotel in 2018. On September 3, 2019, Sellers drafted a Hotel Management Agreement effective June 19, 2018, between 45th Street Hotel and NYC Hotel Management LLC, an entity owned and operated by Polselli and Karcho, for "the management and operation" of the Night Hotel. That agreement made no mention of any other manager.

21.     Also important for Soho Boutique was to confirm that 45th Street Hotel was not subject to collective bargaining agreements and that no employees at the Night Hotel were unionized. Soho Boutique sought to avoid union labor based on its experience in the hospitality industry. For that reason, on September 5, 2019, Soho Boutique emailed Polselli's counsel asking whether 45th Street Hotel had "[a]ny documents related to union activities for the employees of the hotel?" After speaking with Polselli, his counsel's response on his behalf was flatly: "No."

### The 2019 Agreement

22.     On September 11, 2019, Soho Boutique, 45th Street Hotel, Karcho, and Davutoglu executed the 2019 Agreement, under which Soho Boutique agreed to purchase a 50% ownership

interest in 45th Street Hotel, and thus, the Night Hotel, from Karcho and Davutoglu in exchange for a $1.5 million capital contribution to 45th Street Hotel. Following the execution and closing of the 2019 Agreement, the parties' respective ownership interests in 45th Street Hotel were as follows: (i) Soho Boutique—50%; (ii) Karcho—25%; and (iii) Davutoglu—25%.

23.     Simultaneously, Soho Boutique entered into a Hotel Management Agreement with 45th Street Hotel, effective as of September 16, 2019, under which Soho Boutique agreed to serve as the sole manager of the Night Hotel, purportedly in replacement of Defendants.

*Breaches of Representations and Warranties in the 2019 Agreement*

24.     At section 4, the 2019 Agreement included a series of representations and warranties by 45th Street Hotel concerning its operational and financial position. As stated in the preamble, 45th Street Hotel "represents and warrants to Buyer [i.e., Soho Boutique] that the statements contained in this Section 4, including the disclosure schedules thereto, are true, correct and complete as of the date of this Agreement and will be true, correct, and complete as of the Closing Date." The 2019 Agreement then states representations and warranties (a) through (t).

25.     45th Street Hotel's representations and warranties in the 2019 Agreement were made while it was affiliated with Polselli and owned by Karcho and Davutoglu, who broadly agreed to jointly and severally indemnify Soho Boutique for any breaches under section 4.

26.     Section 4(c)(iii) of the 2019 Agreement represented and warranted that

the execution and delivery by the Company of this Agreement and any Ancillary Agreement the Company is a party to and the performance by the Company of the Company's obligations under this Agreement do not and will not (iii) conflict with, result in any breach of, require any consent or notice under, constitute a default under (or an event that would, with the passage of time or the giving of notice or both, constitute a breach of or default under), result in the acceleration of, or give rise to a right to terminate, cancel, amend, modify, abandon or accelerate, any Contract or other arrangement that is applicable to, binding upon or enforceable against the Company, the Purchased Interests, Membership Interests or properties or assets of the Company . . . .

27.     The representations and warranties in section 4(c)(iii) were false and misleading. After signing the 2019 Agreement, Soho Boutique discovered that 45th Street Hotel had entered into and was in breach of a Licensing Agreement dated June 20, 2018, with NYC Flex LLC ("NYC Flex"), as licensor. In consideration of the execution of the Licensing Agreement, Karcho executed a personal guaranty dated June 20, 2018, under which she agreed to be personally bound by the terms of the Licensing Agreement and promised and agreed to pay all monies due and payable to NYC Flex under the Licensing Agreement. Among other things, the Licensing Agreement prohibits the transfer of ownership and change of management of the Night Hotel without notice and consent by NYC Flex. Defendants failed to obtain such consent in light of the 2019 Agreement. The Licensing Agreement also required 45th Street Hotel to renovate the Night Hotel by July 1, 2019, and pay monthly royalty fees equal to the greater of (i) 3% of gross revenues or (ii) $14,167 per month ($170,000 over a 12-month period). 45th Street Hotel, however, neither renovated the Night Hotel nor was current in its monthly royalty obligations. Finally, the Licensing Agreement required that the Night Hotel operate under the "Unscripted ®" brand name, thus precluding the use of Soho Boutique's own brand—"by Soho Boutique Hotels"—as it had planned.

28.     As a result of these breaches, Soho Boutique sustained significant damages. On June 5, 2020, NYC Flex filed suit against 45th Street Hotel and Karcho for breach of the Licensing Agreement seeking more than $4 million in damages. Among other things, NYC Flex seeks to recover: (i) out of pocket expenses for web services, market reports and email services; (ii) unpaid installments of management and consulting fees; (iii) the cost of reducing the 10-year Licensing Agreement to a 36-month term at a royalty fee of $15,000 per month; and (iv) legal fees and costs incurred in the lawsuit. Sellers are liable to Soho Boutique for all of these damages, plus all of the attorneys' fees, costs, and other expenses Soho Boutique has incurred in the lawsuit.

29.     Section 4(g)(viii) of the 2019 Agreement represented and warranted that "Schedule 4(g) . . . sets forth each Contract . . . to which the Company is a party or by which the Company is bound that . . . (viii) is a Contract for a collective bargaining agreement or other labor union Contract."  Schedule 4(g) identified no collective bargaining or labor union contracts.

30.     Section 4(l)(vii) of the 2019 Agreement similarly represented and warranted:

> The Company is not bound by or subject to (and none of its assets or properties is bound by or subject to) any written or oral, express or implied, contract, commitment or arrangement with any labor union, and no labor union has requested or, to the knowledge of the Company, has sought to represent any of the employees, representatives or agents of the Company. There is no strike or other labor dispute involving the Company pending, or to the Company's knowledge, threatened, against the Company, nor is the Company aware of any labor organization activity involving its employees.

After executing the 2019 Agreement, Soho Boutique learned that 45th Street Hotel and the Night Hotel were subject to a collective bargaining agreement with the New York Hotel and Motel Trades Council, AFL-CIO (the "Union") through June 30, 2026.  In an e-mail dated September 19, 2019, Defendants' counsel advised Soho Boutique: "It is my understanding that there are no existing union contracts and I will get confirmation from [Polselli]."  Polselli then responded: "NO THERE ARE UNION CONTRACTS.  The HOTEL was and has been a UNION HOTEL."  By then, Soho Boutique had flown in 12 employees from Spain to help manage the Night Hotel and implement its desired operational changes.  When Soho Boutique arrived at the Night Hotel, it learned that the desired changes would likely violate the collective bargaining agreement.

31.     The failure to disclose the existence of a collective bargaining agreement with the Union violated sections 4(g)(viii) and Section 4(l)(vii) of the 2019 Agreement, causing Soho Boutique significant harm.  Among other things, Union employee wages and benefits are nearly 100% and 33% higher, respectively, than non-Union wages and benefits, significantly increasing operating expenses and reducing profitability for the Night Hotel.  Moreover, Soho Boutique learned

that 45th Street Hotel had been in arrears of its obligations to the Union for over one year, prompting the Union to initiate arbitration proceedings against Soho Boutique.  On July 14, 2020, an arbitrator ordered Soho Boutique to pay $720,533.90 to the Union and Hotel Association of New York City, Inc. Health Benefits Fund on behalf of its employees.  The preexisting relationship with the Union reflects the falsity of Polselli's pre-contractual representations on the subject, and the failure to disclose this liability also amounted to a breach of section 4(c)(iii) of the 2019 Agreement.  Sellers are liable to Soho Boutique for all these damages, plus all of the attorneys' fees, costs, and other expenses Soho Boutique incurred in the arbitration instituted by the Union.

32.     Section 4(h)(i) of the 2019 Agreement represented and warranted that 45th Street Hotel "is in peaceful and undisturbed possession of the space and/or estate under the Ground Lease and has good and valid rights of ingress and egress to and from the Leased Real Property and to the public street systems for all usual street, road and utility purposes."

33.     However, two weeks after executing the 2019 Agreement, Soho Boutique learned that 45th Street Hotel is bound by a 15-year lease agreement with a restaurant that occupies part of the "space and/or estate under the Ground Lease."  On October 1, 2013, Kensington and 132 West 45th St. Restaurant LLC (the "Restaurant") entered into an Agreement of Lease, under which the Restaurant leased "a portion of the street level floor of the [Night] Hotel containing approximately 600 square feet of space located at the rear of said floor, together with an outdoor garden adjacent at the rear" and "approximately 400 square feet of space located at the rear of the basement floor directly below the Restaurant Space . . . together with a usufruct in portions of the lobby equipped and furnished as a lounge area with a service bar."  In exchange, the Restaurant agreed to pay Kensington $30,000 in rent per year, with periodic increases starting on October 1, 2018. The lease does not terminate until September 30, 2028, in more than eight years.

34.     Under the Assignment and Assumption of Lease dated as of June 20, 2018, Kensington assigned to 45th Street Hotel and 45th Street Hotel assumed from Kensington the leasehold estate created by the Ground Lease, including the Agreement of Lease between Kensington and the Restaurant.  Unbeknownst to Soho Boutique, the Restaurant continued making its periodic rent payments to Kensington notwithstanding the Assignment and Assumption of Lease.

35.     Because Soho Boutique is not "in peaceful and undisturbed possession of the space and/or estate under the Ground Lease," section 4(h)(i) of the 2019 Agreement has been breached. Among other things, Soho Boutique is unable to replace the Restaurant with an establishment that fits the Soho Boutique brand name and is obligated to collect rent payments that are significantly below market value until 2028.  Sellers are liable for the full amount required to remove the Restaurant from the Night Hotel and all associated attorneys' fees, costs, and expenses.

36.     Section 4(i) of the 2019 Agreement discussed all of 45th Street Hotel's "Material Liabilities," representing and warranting that:

> Other than the repayments and/or distributions to be made in accordance with the Distribution Schedule attached to the A&R Agreement, the Company has no liability or obligation, absolute or contingent (individually or in the aggregate), except (i) obligations and liabilities incurred after the date of incorporation in the ordinary course of business that are not material, individually or in the aggregate, (ii) obligations under Contracts made in the ordinary course of business that would not be required to be reflected in financial statements prepared in accordance with generally accepted accounting principles, and (iii) obligations under the Lion Financial Loan Documents.

37.     In addition to these liabilities, Soho Boutique has discovered that there are numerous "Violations and Judgments" affecting 45th Street Hotel (as defined in the 2019 Agreement), which amount to material liabilities for 45th Street Hotel and were not previously disclosed to Soho Boutique.  The following is a non-exhaustive list of building and other code violations which were not disclosed under the 2019 Agreements and the costs of resolving each violation:

11

- Sidewalk Violations

    o  Infraction Number 9873 – $250.00

    o  Infraction Number 20816 – $250.00

    o  Infraction Number 30882 – $250.00

- Department of Building Violations

    o  Infraction Number 013007CMTF02RNS – $500.00

    o  Infraction Number 07311FISPNRF00479 – $500.00

- Environmental Control Board Violation

    o  Infraction Number 37013385N – $1,000.00

- FDNY Violations

    o  Infraction Number 15843200M – $1,000.00

    o  Infraction Number 12034894R – $1,000.00

    o  Infraction Number 13199500R – $1,000.00

- NY Housing Preservation and Development Violations

    o  Infraction Number 29358553271808 – $125.00

    o  Infraction Number 29359133271808 – $125.00

    o  Infraction Number 29359143271808 – $125.00

    o  Infraction Number 29359153271808 – $125.00

    o  Infraction Number 29359433271808 – $125.00

38.     The estimated cost of resolving these violations is $11,325.00.

39.     In addition, since the 2019 Agreement, Soho Boutique also has learned of about

$397,198.80 in outstanding judgments and fines affecting 45th Street Hotel:

- Docket # 2008SN104113 – $5,000.00

- Docket # 2011SN105480 – $5,000.00

- Docket # 2012SN067335 – $5,000.00

- Docket # 021440-09 – $5,000.00

- Docket #2011SN113401 – $5,000.00

- Docket # 2012SN067335 – $5,000.00

- Warrant ID # 322452 – Account ID # 215-100090138202 – $43,940.19

- Index # E0494264020001 – $56,143.14

- Warrant ID # 299459 - Account ID # 215-100090138202 – $45,130.69

- Index # E0494264020002 – $73,315.15

- Warrant ID # E-049426402-W001-4 – Assessment ID # L-050181119-4 – $56,143.14

- Warrant ID # E-049426402-W002-8 – Assessment ID # L-050823835-2 – $73,315.15

- Criminal Court Control # 002721452-01 – $5,000.00

- Environmental Control Board Lien #037002780J – $1,000.00

- Mechanics Lien # 104 Block 997 Lot 47 – $5,886.34

40.     Moreover, as described below, Soho Boutique has learned that 45th Street Hotel has been in default of their lease with B.K.B.W. since July 1, 2018, failing to pay more than $1.3 million in property taxes due under the lease agreement.  Sellers failed to disclose this material liability in violation of sections 4(i) and 4(c)(iii)(B) of the 2019 Agreement, among others.

41.     Section 4(c)(iii)(C) of the 2019 Agreement represented that "the execution and de-livery by the Company of this Agreement and any Ancillary Agreement the Company is a party to and the performance by the Company of the Company's obligations under this Agreement do not and will not" be in "conflict with . . . the management agreement between the Company and NYC

13

Hotel Management, LLC, a Michigan limited liability company, dated as of June 19, 2018 (the 'Existing Management Agreement')."  Similarly, section 4(t) of the 2019 Agreement represented that 45th Street Hotel "is in good standing under the Existing Management Agreement and all payments currently due under such agreement have been paid.  There does not exist under the Existing Management Agreement any default or any event which with notice or lapse of time or both would constitute a default."  In reality, the Existing Management Agreement was a sham, as Defendants and their companies were not the managers of the Night Hotel.  Rather, Dream Hotel Group LLC ("Dream"), an affiliate of the Night Hotel's prior owner, Kensington, and NYC Flex were in charge of managing the Night Hotel under the Licensing Agreement between NYC Flex and 45th Street Hotel.  For a management fee, Dream oversaw the Night Hotel's operations.  These facts demonstrate the falsity of Polselli's pre-contractual representations on the same topic.

42.     These breaches of sections 4(c)(iii)(C) and 4(t) of the 2019 Agreement caused Soho Boutique significant harm.  Among other things, Soho Boutique was precluded from: (i) marketing the Night Hotel in online travel agencies—such as Expedia and Booking—for more than three months after its acquisition, causing it to lose hundreds of thousands of dollars in revenue; and (ii) managing the Night Hotel for a period of time.  Additionally, under the Hotel Management Agreement executed between Soho Boutique and 45th Street Hotel on September 11, 2019, Soho Boutique was entitled to a monthly management fee equal to 3% of the Night Hotel's gross operating revenues, commencing on October 5, 2019.  As a result of these breaches of the 2019 Agreement, however, Soho Boutique was unable to recover a management fee it was contractually owed.

43.     Section 4(j) represents and warrants that 45th Street Hotel's "Financial Statements have been prepared in accordance with generally accepted accounting principles . . . [and] fairly present in all material respects the financial condition and operating results of the Company as of

the dates, and for the periods, indicated." These representations and warranties also were false and misleading. Among other things, 45th Street Hotel's financial statements failed to account for: (i) rent and property taxes due under the Ground Lease; (ii) obligations to NYC Flex under the Licensing Agreement; (iii) more than $350,000 in undisclosed liabilities to third-party vendors; and (iv) more than $375,000 (plus late fees) in undisclosed obligations to the Union.

44.     Section 5(c) of the 2019 Agreement contained "Other Covenants, Representations and Warranties," including the following "Post-Closing" obligations:

(i) Within six (6) months following the Closing Date, Owner shall deliver to Buyer an estoppel certificate from the Ground Lessor in the form set forth on Schedule 5(c)(i), attached hereto and made a part hereof. In connection therewith, Buyer represents and warrants that (i) Ground Lessor's consent is not required for the issuance, sale and delivery of the Purchased Interests to Buyer; and (ii) the issuance, sale and delivery of the Purchased Interests to Buyer, as contemplated in this Agreement, does not invalidate or otherwise affect the terms of that certain Subordination, Non-Disturbance and Attornment Agreement dated as of August 3, 2015 and recorded in the Office of the City Register of the City of New York, under CRFN #201500028278;

(ii) Within six (6) months from the Closing Date, Seller shall transfer to the Buyer and/or a designated affiliate of Buyer of that certain hotel liquor license (the "Liquor License") issued by the New York State Liquor Authority, identified as Hotel Liquor License Serial #1170627, Certificate #887563, effective as of June 19, 2018 and expiring on January 31, 2020.

45.     More than six months after the "Closing Date," Defendants had failed to "deliver to Buyer an estoppel certificate from the Ground Lessor in the form set forth on Schedule 5(c)(i)" or transfer the Liquor License, in breach of sections 5(c)(i)-(ii) of the 2019 Agreement.

### *The 2019 Agreement – Indemnification Provision*

46.     Section 7(b)(i) of the 2019 Agreement provides Soho Boutique's indemnification rights against Sellers, who are jointly and severally liable to Soho Boutique:

(i) Owner, jointly and severally, agrees to indemnify and hold harmless Buyer from and against any Damages that Buyer may suffer resulting from, arising out of, indirectly or directly relating to, in the nature of, or caused by any breach by Seller

and/or Owner of any of Seller's and/or Owner's representations and warranties contained in this Agreement, the Ancillary Agreements to which Seller and/or Owner is a party, or in any certificate, document or instrument delivered by Seller, its agents and/or Owner pursuant to this Agreement on the Closing Date and/or during the Survival Period.

(ii) Owner, jointly and severally, agrees to indemnify and hold harmless Buyer from and against any Damages that Buyer may suffer resulting from, arising out of, indirectly or directly relating to, in the nature of, or caused by any breach by Seller and/or Owner of any of Seller's and/or Owner's agreements or covenants contained in this Agreement, the Ancillary Agreements to which Seller and/or Owner is a party or in any certificate, document or instrument delivered by Seller, its agents and/or Owner pursuant to this Agreement.

47.     The 2019 Agreement defines "Damages" as including "all actions, suits, proceedings, hearings, investigations, charges, complaints, claims, demands, injunctions, judgments, orders, decrees, rulings, damages, diminution of value, dues, penalties, fines, costs, amounts paid in settlement, liabilities, obligations, taxes, Liens, losses, expenses, and fees, including court costs and reasonable attorneys' fees and expenses," plainly encompassing all of the many breaches of representations and warranties and resulting harm to Soho Boutique described above.

48.     Thus, Sellers must indemnify Soho Boutique for any Damages, including "reasonable attorneys' fees and expenses," arising from 45th Street Hotel's breaches of the representations and warranties in the 2019 Agreement while under Sellers' exclusive ownership.

### *The 2020 Agreement*

49.     After learning of numerous breaches in the 2019 Agreement, Soho Boutique provided Defendants ample opportunity to come into compliance with their respective duties and obligations and cure the various defaults that had occurred in connection with the 2019 Agreement. Despite agreeing to remedy its multiple breaches in an expeditious manner, Defendants repeatedly

failed to honor their promises.  On February 14, 2020, Soho Boutique sent a letter to Sellers demanding indemnification and requesting that all breaches of the 2019 Agreement be rectified within 30 days.  Defendants unfortunately ignored Soho Boutique's demands.

50.     Shortly thereafter, Soho Boutique then commenced negotiations with Sellers to acquire Sellers' remaining 50% ownership interest in 45th Street Hotel.

51.     Before reaching a second purchase agreement, Soho Boutique learned that the Night Hotel's landlord had filed suit against 45th Street Hotel for defaulting on rent and property tax obligations due under the Ground Lease.  On March 10, 2020, B.K.B.W. (i) filed a Petition for Non-Payment-Commercial, in the Civil Court of the City of New York, County of New York, in connection with a FOURTEEN (14) DAY RENT DEMAND NOTICE TO TENANT, dated February 24, 2020, in which B.K.B.W. was demanding payment for additional rent consisting of real estate taxes and related costs in the amount of $1,317,274.47 as of the date of the petition (the "Taxes Payment") and demanding payment for a "Water Board Related Charge" in the amount of $17,355.04 as of the date of the petition (the "Water Board Payment"); and (ii) delivered to the Company an additional FOURTEEN (14) DAY RENT DEMAND NOTICE TO TENANT for the "Monthly Real Estate Tax Escrow pursuant to Paragraph 3(B)(iii) of the Lease" in the amount of $50,753.22 as of the date of the notice (the "Tax Escrow Payment").

52.     Sellers later agreed to sell the remainder of their ownership interest in 45th Street Hotel to Soho Boutique.  As described below, the purchase price gave credit for some dollar amounts of certain of Sellers' outstanding liabilities to Soho Boutique resulting from the breaches of the 2019 Agreement and amounts due to B.K.B.W under the Ground Lease, including those described above.  Many of these debts have grown significantly since that time.

*The 2020 Assignment of Ownership/Pricing Formula*

53.     On March 18, 2020, Soho Boutique and Sellers executed the 2020 Agreement under which Soho Boutique acquired Sellers' remaining 50% ownership interest in 45th Street Hotel. Under the 2020 Agreement, Sellers acknowledged multiple breaches of the 2019 Agreement.

54.     The price Soho Boutique agreed to pay for Sellers' remaining 50% ownership interest in 45th Street Hotel was based on a formula that deducted several of Sellers' obligations to Soho Boutique and other third parties.  Section 2(b) describes the parties' obligations:

> (b) Payment. In consideration of Sellers' sale to Buyer of the Purchased Interests and subject to terms of this Agreement, Buyer agrees to pay to Sellers Thirty Six Thousand and No/100 Dollars ($36,000.00) per one percentage of the Purchased Interests (the "Purchase Price") (i.e., if the Purchased Interests is equal to 10%, then Buyer shall pay Sellers at Closing, subject to the terms set forth herein, $360,000.00), payable in accordance with the terms and conditions set forth herein and subject to the credits, holdbacks and fees described in this Agreement, including, but not limited to, Vendor's Buyer Credit (as defined in Section 5), the Purchased Interests Taxes (as defined in Section 2(c)) and, to the extent applicable, the Vendor's Fees Holdback (as defined in Section 5), the Brand Credit (as defined in Section 5), the Accrued Lion Loan Funds (as defined in Section 5), the Estimate of Satisfaction of Violations/Judgments (as defined in Section 5) and the Occupancy Taxes (as defined in Section 5).  In any event, if the amount due by Buyer to Sellers for the acquisition of the Purchased Interests results in a negative number pursuant to the terms of Section 2(b)(i) or Section 2(b)(ii), Buyer and Sellers agree that Buyer shall pay $100.00 to Sellers as sufficient consideration for the sale of the Purchased Interests.

55.     Sections 2(b)(i)-(iii) set forth three different formulae to calculate the purchase price, depending on Sellers' compliance with various closing requirements.  Relevant here is section 2(b)(iii)(A), which provides that, "[i]f Sellers fail to deliver all of the Necessary Closing Documents to Buyer on or before Closing, Buyer, in its sole absolute discretion, shall have the option of":

> (A) proceeding to Closing, provided that the Purchase Price paid by Buyer to Sellers at Closing in consideration for the sale of the Purchased Interests to Buyer and the continued use by the Company of the Liquor License shall be equal to $100.00; in the event of the foregoing, Sellers acknowledge and agree that $100.00

shall be sufficient consideration for the sale of the Purchased Interests and continued use by the Company of the Liquor License considering Buyer's risks in proceeding with the Closing without the satisfaction of all of the Sellers Closing Requirements.

56.     "Necessary Closing Documents," as defined in the 2020 Agreement, included "(a)

the Liquor License Transfer . . . , (b) the Termination of Restaurant Lease . . . , (c) the Lion Letter

. . . , and (d) the Ground Lease Estoppel," all as defined in Section 5 of the 2020 Agreement.

57.     Therefore, if Sellers failed to deliver the Necessary Closing Documents to Soho

Boutique on or before Closing, Soho Boutique was entitled to purchase Sellers' remaining 50%

ownership interest in 45th Street Hotel for $100.00 under the terms of the 2020 Agreement.

### *Breaches of the 2020 Agreement*

58.     Similar to the breaches of the 2019 Agreement, Sellers made and breached numerous representations, warranties, covenants, and obligations in the 2020 Agreement.

59.     For instance, section 5(a)(i) of the 2020 Agreement provides:

Sellers, jointly and severally, hereby represent and warrant that prior to the Initial Transaction certain vendors provided services to the Hotel and have not been paid for those services ("Unpaid Vendors"). Sellers acknowledge that, as of the Effective Date, Sellers are responsible for the payment to the Unpaid Vendors ("Vendor's Fees").

60.     To date, Sellers have failed to satisfy the Vendor's Fees, as required, forcing Soho

Boutique to respond on behalf of 45th Street Hotel. As a result, Soho Boutique has sustained

approximately $2.3 million in damages due to Sellers' breaches of section 5(a)(i).

61.     Section 5(a)(ii) of the 2020 Agreement provides:

Sellers, jointly and severally, further represent and warrant that, prior to Closing, Sellers shall transfer (as the meaning of such term is specifically defined in the following sentence) to the Buyer and/or a designated affiliate of Buyer that certain hotel liquor license (the "Liquor License") issued by the New York State Liquor Authority, identified as Hotel Liquor License Serial #1170627, Certificate #914398, effective as of January 21, 2020 and expiring on January 31, 2022.

62.     Sellers have not transferred the Liquor License to Soho Boutique "and/or a designated affiliate of Buyer."  They must be ordered to do so immediately.

63.     Section 5(a)(iii) of the 2020 Agreement provides:

Sellers, jointly and severally, further represent and warrant that on the Closing Date, Sellers shall deliver to Buyer a termination of that certain Agreement of Lease (the "Restaurant Lease") dated as of October 1, 2013, by and between Kensington and 132 West 45th St. Restaurant LLC ("Termination of Restaurant Lease").  The premises subject to the Restaurant Lease shall be hereinafter referred to as the "Restaurant Premises."  Sellers' obligation to deliver the Termination of Restaurant Lease to Buyer at Closing shall include Sellers' obligation to deliver the Restaurant Premises at Closing free of any tenants, parties in possession, occupancy agreements or leases.

64.     Sellers have failed to deliver the Termination of Restaurant Lease to Soho Boutique, and the Restaurant Lease remains in effect.  Thus, the Restaurant Premises are not "free of any tenants, parties in possession, occupancy agreements or leases," in breach of section 5(a)(iii) of the 2020 Agreement.  Sellers must be ordered to deliver the Termination of Restaurant Lease.

65.     Section 5(vi) of the 2020 Agreement provides that "Sellers, jointly and severally, further represent and warrant that, on or prior to Closing, Sellers shall request from Lion Financial, LLC . . . and deliver to Buyer an estoppel certificate and acknowledgment, in the form set forth on Exhibit 'C'" to the 2020 Agreement.  But yet again, on or prior to Closing of the 2020 Agreement, Sellers failed to deliver "an estoppel certificate and acknowledgment" from Lion Financial, in breach of section 5(vi) of the 2020 Agreement, and must be ordered to do so immediately.

66.     Section 5(vii) of the 2020 Agreement provides that "Sellers, jointly and severally, further represent and warrant that, on or prior to Closing, Sellers shall deliver to Buyer an estoppel certification from the Ground Lessor in the form set forth on Exhibit 'D'" to the 2020 Agreement.  On or prior to Closing, Sellers failed to deliver "an estoppel certification from the Ground Lessor," in violation of section 5(vii) of the 2020 Agreement, and must be ordered to do so immediately.

67.     On July 20, 2020, Soho Boutique sent a letter to Sellers advising them of their failure to provide the Necessary Closing Documents by the Closing Date and Soho Boutique's election under Section 2(iii)(A) of the 2020 Agreement "to proceed to Closing by delivering $100.00 . . . to Seller as consideration for the sale of the Purchased Interests (which represent 50% of the membership interests of the Company) and continued use by the Company of the Liquor License." The letter was accompanied by a check issued to Sellers for $100.00.

68.     By letter dated July 22, 2020, Sellers rejected Soho Boutique's satisfaction of the purchase price, demanded rescission of the 2020 Agreement, and threatened suit unless Soho Boutique satisfied more than $5 million in purported (and unsubstantiated) obligations.

69.     On July 23, 2020, Soho Boutique addressed and clarified Sellers' numerous misconceptions and reiterated that, given Sellers' failure to provide the Necessary Closing Documents by July 16, 2020, the "Escrow Agent has the power and obligation to (i) fill in any blanks in the Assignment of Membership Interest, and (ii) to release the fully executed Assignment of Membership Interest to Buyer."  Under section 6(a)(i) of the 2020 Agreement, Sellers had to deliver an executed Assignment of Membership Interest to the Escrow Agent within five business days of the Effective Date, i.e., March 18, 2020.  All conditions having been met, Soho Boutique is entitled to release the fully executed Assignment of Membership Interest and receive Sellers' remaining 50% ownership interest in 45th Street Hotel, per the terms of the 2020 Agreement.

70.     As a result of Sellers' failure to deliver the Necessary Closing Documents as required under the 2020 Agreement, Soho Boutique was entitled to purchase Sellers' remaining 50% ownership interest in 45th Street Hotel for $100.00, as provided under section 2(b)(iii)(A).  Additionally, or at least alternatively, Sellers are liable to Soho Boutique for all the harm resulting from their substantial breaches of the 2020 Agreement, as detailed above.

71.     To date, Soho Boutique has not received the Necessary Closing Documents. As a result, Sellers should be ordered to deliver them immediately.

### *The 2020 Agreement – Indemnification Provision*

72.     Section 9(b)(i) of the 2020 Agreement provides Soho Boutique's indemnification rights against Sellers:

> (ii) The Sellers, jointly and severally, shall indemnify and hold harmless the Buyer from, against and in respect of the full amount of any and all liabilities, damages, claims, deficiencies, assessments, losses, penalties, interest, costs and expenses, including, without limitation, reasonable fees and disbursements of trial and appellate counsel arising from, in connection with, or incident to (i) any breach or violation of any of the representations, warranties, covenants or agreements of the Sellers set forth in this Agreement; (ii) any third party claims related to the Leased Real Property, the Purchased Interests, the Company or the ownership or operation of the Leased Real Property, relating to the period on or prior to the closing date of the Initial Transaction; (iii) any third party claims resulting from a default or claim of default of Sellers or the Company under any agreement to which the Sellers or Company was a party on or prior to the Closing Date relating to acts or events occurring during the period on or prior to the closing date of the Initial Transaction, (iv) any negligence or misconduct solely and directly attributable to Sellers' actions or omissions to act, or their affiliates that occurred on or prior to the Closing Date with respect to the Company or the Leased Real Property, except to the extent of Buyer's contributory or comparative negligence or misconduct; and (v) any third party claims resulting from Sellers' failure to deliver the Sellers Closing Requirements at Closing. The obligations set forth in this Section shall survive the Closing.

73.     Soho Boutique is entitled to recover all damages, including "reasonable fees and disbursements of trial and appellate counsel," for Sellers' breaches of the 2020 Agreement.

### *Sellers Are Liable to Soho Boutique for*<br>*Breach of the Capital Contribution Agreement & Modification to Operating Agreement*

74.     Simultaneous with the execution of the 2020 Agreement on March 18, 2020, the parties entered into the Capital Contribution Agreement & Modification to Operating Agreement (the "Capital Contribution Agreement"), under which Soho Boutique agreed to make an additional capital contribution to 45th Street Hotel to pay for certain rent and property tax demands delivered

to it by B.K.B.W. and to pay for certain payments due to vendors in exchange for certain of Sellers' ownership interests in 45th Street Hotel, as provided under sections 3(a)-(b):

> (a) In exchange for and effective as of the date Soho Boutique makes the 50/50 Liability Capital Contribution, Soho Boutique's Percentage Interests in the Company shall be increased by one percentage point for every $36,000 in excess of half of the amount of the 50/50 Liability Capital Contribution, and the Percentage Interests held by the Initial Members shall decrease in direct proportion to the increase in Soho Boutique's Percentage Interests on a pro rata basis.

> (b) In exchange for and effective as of the date Soho Boutique makes the Full Liability Capital Contribution, Soho Boutique's Percentage Interests in the Company shall be increased by one percentage point for every $36,000 contributed by Soho Boutique through the Full Liability Capital Contribution, and the Percentage Interests held by the Initial Members shall decrease in direct proportion to the increase in Soho Boutique's Percentage Interests on a pro rata basis.

75.     On July 14, 2020, B.K.B.W. and 45th Street Hotel entered into a Stipulation of Settlement under which 45th Street Hotel agreed to pay all outstanding amounts owed by Sellers and 45th Street Hotel to B.K.B.W.  On July 24, 2020, Soho Boutique made an initial payment of $742,657.66 to B.K.B.W.   The balance—$1,164,546.38—must be paid by Soho Boutique and Sellers to B.K.B.W. in six monthly installments beginning on January 1, 2021.

76.     If the Court were to find that Soho Boutique is not entitled to purchase Sellers' remaining 50% ownership interest in 45th Street Hotel, whether for $100.00 or otherwise, as provided under the 2020 Agreement, Sellers are liable to Soho Boutique for all corresponding amounts paid to B.K.B.W. on behalf of Sellers.  Sellers have not made any contributions to Soho Boutique or 45th Street Hotel for the satisfaction of the Taxes Payment, Tax Escrow Payment, and Water Board Payment, making them liable to Soho Boutique for amounts paid on their behalves.

77.     The Capital Contribution Agreement also provides: "Prior to the execution of the Operating Agreement, certain vendors provided services to the Leased Real Property and were not paid at such time for such services (the "Vendor Payments")."  Despite Sellers being "fully liable

(i.e., 100% liable) for the Vendor Payments," they have failed to satisfy the Vendor Payments, in violation of the Capital Contribution Agreement, and remain liable for the payments.

**Count I**
**(Declaratory Judgment Against Karcho and Davutoglu)**

78.    Soho Boutique incorporates by reference the allegations contained in Paragraphs 1-77  as if fully set forth herein.

79.    In accordance with 28 U.S.C. §§ 2201 and 2202, Plaintiff Soho Boutique respectfully requests that the Court determine the rights, status, and legal relations between the parties relative to the 2020 Agreement and Assignment of Membership Interest.

80.    28 U.S.C. § 2201 provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

81.    Furthermore, 28 U.S.C. § 2202 provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

82.    There is a justiciable controversy about the rights and status of the parties concerning the: (i) 50% ownership interest in 45th Street Hotel that Soho Boutique acquired from Sellers under the 2020 Agreement; and (ii) the consideration owed to Sellers under the 2020 Agreement for their 50% ownership interest in 45th Street Hotel.  Soho Boutique maintains that it is the 100% owner of 45th Street Hotel, the sale of Sellers' 50% ownership interest in 45th Street Hotel to Soho Boutique under the 2020 Agreement is complete, and under the 2020 Agreement, Sellers were entitled to receive only $100 as consideration for the sale of their 50% ownership interest in 45th

Street Hotel to Soho Boutique; additionally, Soho Boutique maintains that it has acquired owner-ship interests by way of the Capital Contribution Agreement. Sellers, however, maintain that Soho Boutique is the owner of only 50% of 45th Street Hotel and the sale of Sellers' 50% ownership interest in 45th Street Hotel to Soho Boutique is not yet complete because under the 2020 Agree-ment (and/or the Capital Contribution Agreement), Sellers have not received all of the considera-tion due to them as consideration for the sale of their 50% ownership interest (or any portion of it) in 45th Street Hotel to Soho Boutique which then remained as of the 2020 Agreement.

83. The parties' controversies are real and substantial, involving a genuine conflict of tangible interests. As a result of the controversies relating to the 2020 Agreement and Assignment of Membership Interest, there is a bona fide, actual, present practical need for the declaration. The declaration sought in this action deals with present, ascertained or ascertainable facts, or a present controversy as to a state of facts.

84. Soho Boutique's rights and/or obligations concerning the 2020 Agreement and As-signment of Membership Interest are dependent upon the facts or the law applicable to the facts. Soho Boutique and Sellers have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law. All antagonistic and adverse interests are presently before the Court. The relief sought is not merely seeking an advisory opinion, legal opinion or the answer to ques-tions propounded by curiosity.

85. Soho Boutique requests that the Court enter a judgment declaring that: (i) Soho Boutique owns 100% of 45th Street Hotel; (ii) the sale of Sellers' 50% ownership interest in 45th Street Hotel to Soho Boutique under the 2020 Agreement (and/or some portion of that interest under the Capital Contribution Agreement) is complete; (iii) under the 2020 Agreement, Sellers were entitled to receive only $100.00 as consideration for the sale of their 50% ownership interest

in 45th Street Hotel to Soho Boutique; and (iv) Soho Boutique is entitled to recover attorneys' fees, costs, and pre- and post-judgment interest in connection with this action.

WHEREFORE, Soho Boutique respectfully requests that the Court enter a judgment declaring that: (i) Soho Boutique owns 100% of 45th Street Hotel; (ii) the sale of Sellers' 50% ownership interest in 45th Street Hotel to Soho Boutique under the 2020 Agreement (and/or some portion of that interest under the Capital Contribution Agreement) is complete; (iii) under the 2020 Agreement, Sellers were entitled to receive only $100.00 as consideration for the sale of their 50% ownership interest in 45th Street Hotel to Soho Boutique; and (iv) Soho Boutique is entitled to recover attorneys' fees, costs, and pre- and post-judgment interest.

### Count II
### (Breach of Contract and Indemnification Against Karcho and Davutoglu)
### (2019 Agreement)

86.     Soho Boutique incorporates by reference the allegations contained in Paragraphs 1-77 as if fully set forth herein.

87.     Soho Boutique sues Sellers for breach of contract and indemnification under the 2019 Agreement.  The 2019 Agreement is a valid and binding agreement involving Soho Boutique and Sellers under which Sellers agreed, jointly and severally, to indemnify Soho Boutique for breaches of representations, warranties, covenants, and obligations in that contract.

88.     45th Street Hotel, while under the exclusive ownership of Sellers, materially breached the 2019 Agreement by, among other things:

      a.  Section 4(c)(iii) and 4(t): 45th Street Hotel had entered into and was in breach of a License Agreement dated June 30, 2018, with NYC Flex, LLC, as licensor;

      b.  Sections 4(g)(viii) and 4(l)(vii): Collective bargaining contract with the Union;

      c.  Section 4(h)(i): 15-year lease agreement with the Restaurant;

    d.   Section 4(i): Multiple material liabilities, including unpaid property taxes, fines, penalties, and other judgments;

    e.   Section 4(j): Failing to provide accurate financial statements; and

    f.   Sections 5(c)(i)-(ii): Delivering to Soho Boutique "an estoppel certificate from the Ground Lessor in the form set forth on Schedule 5(c)(i)" and transferring the Liquor License within six months of closing.

89.    Soho Boutique has suffered, and continues to suffer, damages as a result of 45th Street Hotel's material breaches of the 2019 Agreement.  Under section 7(b)(i) of the 2019 Agreement, Sellers are liable, jointly and severally, to indemnify Soho Boutique for these damages, but they have failed to do so, breaching the 2019 Agreement.

WHEREFORE, Soho Boutique demands judgment against Sellers, jointly and severally, in the amount of its damages, plus attorneys' fees, costs, and pre- and post-judgment interest.

**<u>Count III</u>**
**(Breach of Contract and Indemnification Against Karcho and Davutoglu)**
**(2020 Agreement)**

90.    Soho Boutique incorporates by reference the allegations contained in Paragraphs 1-77 as if fully set forth herein.

91.    Soho Boutique sues Sellers for breach of contract and indemnification under the 2020 Agreement.  The 2020 Agreement is a valid and binding agreement among Soho Boutique and Sellers under which Sellers agreed, jointly and severally, to indemnify Soho Boutique for breaches of representations, warranties, covenants, and obligations in that contract.

92.    Sellers have materially breached the 2020 Agreement by, among other things:

    a.   Section 5(a)(i): Vendor's Fees owed to Unpaid Vendors;

    b.   Section 5(a)(ii): Transferring the Liquor License to Soho Boutique;

    c.  Section 5(a)(iii): Delivering the Termination of Restaurant Lease to Soho Boutique;

    d.  Section 5(vi): Delivering "an estoppel certificate and acknowledgment" from Lion Financial, in violation of section 5(vi) of the 2020 Agreement; and

    e.  Section (vii): Delivering "an estoppel certification from the Ground Lessor."

93.    Soho Boutique has suffered, and continues to suffer, damages as a result of Sellers' material breaches of the 2020 Agreement.  Under section 9(b)(i) of the 2020 Agreement, Sellers are liable, jointly and severally, to indemnify Soho Boutique for these damages, but they have failed to do so, breaching the 2020 Agreement.

WHEREFORE, Soho Boutique demands judgment against Sellers, jointly and severally, in the amount of its damages, plus attorneys' fees, costs, and pre- and post-judgment interest.

**Count IV**
**(Breach of Contract Against Karcho and Davutoglu)**
**(Capital Contribution Agreement)**

94.    Soho Boutique incorporates by reference the allegations contained in Paragraphs 1-77 as if fully set forth herein.

95.    Soho Boutique sues Sellers for breach of the Capital Contribution Agreement.

96.    The Capital Contribution Agreement is a valid and binding agreement between Soho Boutique and Sellers under which Sellers assumed certain liabilities of 45th Street Hotel.

97.    Sellers have materially breached the Capital Contribution Agreement because, among other things, Sellers have failed to pay 50% of the Taxes Payment and Tax Escrow Payment and 100% of the Vendor Payments and Water Board Payment.

98.    Soho Boutique has suffered, and continues to suffer, significant damages as a result of Sellers' material breaches of the Capital Contribution Agreement.

WHEREFORE, Soho Boutique demands judgment against Sellers, jointly and severally, in the amount of its damages, plus attorneys' fees, costs, and pre- and post-judgment interest.

## Count V
### (Negligent Misrepresentation Against Polselli)

99.     Soho Boutique incorporates by reference the allegations contained in Paragraphs 1-77 as if fully set forth herein.

100.    Polselli made false and misleading representations to Soho Boutique which Polselli knew or should have known were false, before the 2019 Agreement and to induce Soho Boutique to enter into that agreement.  These statements include, but are not limited to the following, as fully detailed above: (i) Soho Boutique would be legally entitled to manage the day-to-day operations of the Night Hotel upon execution of the 2019 Agreement; (ii) prior to execution of the 2019 Agreement, NYC Hotel Management LLC ran and managed the Night Hotel; and (iii) the employees of the Night Hotel were not unionized or subject to a collective bargaining agreement.

101.    Polselli failed to exercise reasonable care in obtaining or communicating the information in the false and misleading representations Polselli made to Soho Boutique.  Polselli had the means of knowing, ought to have known, and/or had the duty to know the truth of its misrepresentations to Soho Boutique, but Polselli failed to communicate the truth to Soho Boutique.

102.    Soho Boutique reasonably relied on Polselli's false and misleading representations made prior to the execution of the 2019 Agreement when Soho Boutique was induced by Polselli to enter, and indeed entered, into the 2019 Agreement, as detailed above.

103.    As a result of Polselli's false and misleading representations, Soho Boutique has suffered, and continues to suffer, significant damages.

WHEREFORE, Soho Boutique demands judgment against Polselli in the amount of its damages, plus attorneys' fees, costs, and pre- and post-judgment interest.

## Count VI
### (Specific Performance Against Karcho and Davutoglu)

104.     Soho Boutique incorporates by reference the allegations contained in Paragraphs 1-77 as if fully set forth herein.

105.     Soho Boutique is entitled to specific performance of certain obligations provided by the 2019 Agreement and 2020 Agreement.

106.     The 2019 Agreement is a valid and binding agreement among Soho Boutique and Sellers under which Sellers agreed to comply with certain covenants and post-closing obligations.

107.     Under the 2019 Agreement, among other things, Sellers have failed to deliver or transfer, within six months following the Closing Date,: (i) "an estoppel certificate from the Ground Lessor in the form set forth on Schedule 5(c)(i)"; and (ii) the Liquor License.

108.     Sellers should be ordered to comply with their admitted obligations under the 2019 Agreement to deliver "an estoppel certification from the Ground Lessor in the form set forth on Schedule 5(c)(i)" of the 2019 Agreement and to transfer the Liquor License.

109.     The 2020 Agreement is a valid and binding agreements among Soho Boutique and Sellers under which Sellers agreed to comply with certain covenants and pre-closing obligations following execution of the agreement.

110.     Under the 2020 Agreement, among other things, Sellers have failed to: (i) pay the Vendor's Fees due to the Unpaid Vendors; (ii) transfer "to the Buyer and/or a designated affiliate of Buyer" the Liquor License; (iii) deliver to Soho Boutique the Termination of Restaurant Lease; (iv) deliver from Lion Financial, LLC to "Buyer an estoppel certificate and acknowledgment, in the form set forth on Exhibit 'C'" of the 2020 Agreement; and (v) "deliver to Buyer an estoppel certification from the Ground Lessor in the form set forth on Exhibit 'D' [to the 2020 Agreement]."

111.     Sellers should be ordered to comply with their admitted obligations under the 2020 Agreement to pay the Vendor's Fees due to the Unpaid Vendors, transfer to Soho Boutique the Liquor License, and deliver to Soho Boutique the Termination of Restaurant Lease, an estoppel certificate and acknowledgment from Lion Financial, LLC, and an estoppel certification from the Ground Lessor.

WHEREFORE, Soho Boutique respectfully requests that the Court enter a judgment requiring Sellers to comply with their obligations under the 2019 Agreement and 2020 Agreement, as identified in paragraphs 108 and 111, together with attorneys' fees and costs.

### Attorney's Fees and Costs

112.     Section 7(b)(i) of the 2019 Agreement provides that Soho Boutique be indemnified for all Damages, "including court costs and reasonable attorneys' fees and expenses."

113.     Section 9(b)(ii) of the 2020 Agreement provides that Soho Boutique be indemnified for all "reasonable fees and disbursements of trial and appellate counsel arising from, in connection with, or incident to," among other things, "any breach or violation of any of the representations, warranties, covenants or agreements of the Sellers set forth in this Agreement."

114.     The 2019 Agreement, 2020 Agreement, and Capital Contribution Agreement provide that "[t]he prevailing party . . . shall be entitled to recover his or its reasonable attorneys' fees and expenses, including through all appeals."

115.     Thus, Soho Boutique respectfully requests that in addition to the relief it seeks above, it be awarded the attorneys' fees, costs, and other expenses it incurs in this action.

Dated: September 11, 2020

Respectfully submitted,

**HOLLAND & KNIGHT LLP**
*Attorneys for Soho Boutique Times Square LLC*
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile:  (305) 789-7799

By:   */s/ Joseph Mamounas*
      **JOSEPH MAMOUNAS**
      Florida Bar No. 41517
      joseph.mamounas@hklaw.com
      **MANUEL A. MIRANDA**
      Florida Bar No. 119302
      manuel.miranda@hklaw.com